# IN THE OREGON TAX COURT

## ALSEA VENEER, INC.
*v.*
## DEPARTMENT OF REVENUE
(TC 1773)

Dennis L. Bartoldus, Litchfield, MacPherson, Carstens & Gillis, Newport, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered October 21, 1983.

**SAMUEL B. STEWART, Judge.**

The plaintiff appealed from defendant's Opinion and Order No. VL 81-1451 regarding the true cash value of certain equipment and machinery at Alsea Veneer's mill as of January 1, 1981. The plaintiff, operating a mill near Waldport, Oregon, processes logs to produce veneer. Byproducts of the operation are chips and hog fuel. The machinery and equipment under consideration consist of barking centers, an eight-foot lathe line, a four-foot lathe line, a chip system and some miscellaneous equipment.

The plaintiff alleges that the subject property at issue

had a true cash value of $277,000, while the defendant contends that it was worth $579,600 on January 1, 1981. This large discrepancy in alleged true cash value is primarily the result of different approaches to value used by the parties.

Mr. Chester Clark, who became a partner in Alsea Veneer in 1968 (plaintiff was incorporated in 1972), testified for the plaintiff. Mr. Clark stated that the plaintiff owns little timber, obtaining 90 percent of its raw material from Forest Service sales with an average haul distance of 18 to 20 miles. The witness testified that his company was "caught in a bidding game" in 1978 and 1979 regarding timber contracts and that, due to the market beginning to taper off in 1979, no timber purchases were made in 1980, and that by January 1981, the economy had changed so that the timber contracts being held were too high to operate on at a profit.

Mr. Clark alleged that any prospective buyer would check the timber base and existing timber contracts before purchasing a mill and he contended that, in view of the plaintiff's lack of a timber base and the unprofitable timber contracts that plaintiff held, the true cash value of machinery and equipment should be based upon the resale of these units, not as part of a "going concern."

Mr. Clark alleged that, during the last seven to ten years, most machinery and equipment for mills such as the plaintiff's was purchased at auction; only the very large companies bought new equipment.

Plaintiff's Exhibit 4 lists the subject property, its cost "used," and costs for dismantling, freight and installation. Mr. Clark testified that he regularly attended auctions for used machinery and equipment and that he had comparable sales for each item listed on Plaintiff's Exhibit 4, supporting the listed costs. The witness estimated freight costs at $500 per truckload, explaining that a load from Eugene cost approximately $250 and a load from California cost $500 to $600. Mr. Clark testified that his estimate of installation cost was based on $125 per day per man.

Mr. William Baxter, Baxter Appraising & Consulting Company, testified that mills are usually sold at auction, not as a "going concern." He testified that there were no total unit sales of mills from mid-1980 to mid-1981, and alleged that the

market for plaintiff's machinery and equipment was primarily by auction.

Mr. Rod Noah, owner of Halsey Veneer since 1977, testified that he bought used equipment for his mill from auctions and from dealers of used equipment, alleging that this was the typical method of acquiring equipment. Mr. Noah supported the plaintiff's estimate for installation costs, alleging that this was fairly standard in the industry for small business and that installation costs in his own mill had been approximately $125 per day, including the payroll burden.

Mr. Peter E. Burnell, appraisal engineer for the Department of Revenue, presented an appraisal of the subject property relying principally upon a cost approach to valuation with emphasis on reproduction costs new minus depreciation. (Defendant's Exhibit A.)

In the witness' appraisal, at 9, he stated: "[a]ll three appraisal approaches were considered in appraising the subject property. Market value of the unit-of-property was concluded from estimates utilizing the Cost Approach." Testimony revealed that the income approach had been rejected by Mr. Burnell as not being practical in this instance.

Mr. Burnell alleged that replacement cost new, less depreciation of the eight-foot lathe line, was $155,810 (Defendant's Exhibit, A at 12). Plaintiff's estimate for the eight-foot system was $84,575, allocating $65,950 to cost (used), $4,450 for dismantling, $1,925 for freight, and $12,250 for installation (Plaintiff's Exhibit 4). Similar discrepancies were found in comparing the defendant's and the plaintiff's alleged values for each of the other items of machinery and equipment.

The defendant's witness testified that he had attended only three or four auctions of used equipment in the last few years, but that he was not trying to value the subject property "piecemeal," but as a going concern.

Mr. Burnell contended that installation costs would be approximately $29 per hour per worker, instead of the plaintiff's allegation of $125 per day per worker. The witness stated that his opinion was based on information received from Industrial Machinery Erectors Company in Eugene.

The parties' use of different methods in arriving at a

determination of value has resulted in widely divergent conclusions with the defendant contending that the true cash value of the machinery and equipment was more than twice what the plaintiff alleges it was on January 1, 1981. The defendant relies primarily on the replacement cost new less depreciation for each of the various items of machinery and equipment, while alleging that he was not trying to value the subject piecemeal. The plaintiff's determination of true cash value is based on a used market approach plus associated costs.

The testimony of plaintiff's witnesses regarding the general practice of small mills to purchase their machinery and equipment at auction or from dealers of used equipment was unrefuted. Indeed, one of plaintiff's principals and an owner of a similar mill each testified that the machinery and equipment in their respective mills had been purchased "used." The defendant's appraiser testified that information from auction sales of used machinery and equipment was placed in defendant's data bank and that he had written the computer program himself, but he alleged that the cost approach was nearly always used in industrial appraisals.

This unswerving loyalty to the replacement cost new or reproduction cost approach is clearly misplaced in view of the Supreme Court's ruling in *Portland Canning Co. v. Tax Com.,* 241 Or 109, 404 P2d 236 (1965), and *Astoria Plywood Corp. v. Dept. of Rev.,* 258 Or 76, 481 P2d 58 (1971).

■    In *Portland Canning Co., supra,* at 113, the court rejected the replacement cost new less depreciation cost, stating "[t]he commission has no power to permit the evaluation of the property by the exclusive means of the cost approach to determine the value to the owner when a market in fact exists." In *Astoria Plywood Corp., supra,* at 85, defendant argued that *"Portland Canning* was in error and should be overruled." The court rejected defendant's argument, stating "we are still of the same view as stated in *Portland Canning." Astoria Plywood Corp., supra,* at 86.

Evidence was presented that a market for used machinery and equipment does exist, and the defendant's appraiser admitted that information regarding this activity was in the defendant's data bank. Credible evidence was offered that veneer plants with little timber base, as is the

plaintiff corporation, are not usually sold as a going concern. In fact, in cross-examination, defendant's appraiser was asked if there had been any sales of a mill as a "going operation" before the assessment date? The witness replied in the negative.

■ The court is convinced that an active market for used machinery and equipment does exist and that sales of mills with little or no timber base are usually valued piecemeal. The uneconomic timber contracts held by the plaintiff on the assessment date would further detract from its market value in a "unit" sale. As in *Astoria Plywood Corp.* and *Portland Canning Co.,* this court finds that the defendant, in order to perform its statutory duty to appraise property at its market value, must recognize that there is an active market for used machinery and equipment in cases such as this and that this approach to value must be recognized and reconciled with other standard approaches.

The court finds that the plaintiff has prevailed by a preponderance of the evidence, establishing the true cash value of the subject machinery and equipment as $277,000 on January 1, 1981. Plaintiff is entitled to statutory costs.